Filed 6/11/21  P. v. Rivera CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C088497 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE021142) |
| v. | |
| DAVID BRIAN RIVERA, | |
| Defendant and Appellant. | |

After a jury found defendant David Brian Rivera guilty of 10 counts of committing lewd or lascivious acts upon two young girls, the trial court sentenced him to a total term of 504 years in prison.  On appeal, defendant contends:  (1) the trial court abused its discretion under section 352 of the Evidence Code, and violated defendant's due process rights when it denied a motion to exclude evidence of defendant's antisocial personality disorder diagnosis; and (2) the trial court abused its discretion in denying defendant's motion under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) to strike a prior strike.  We reject the first claim because any error was

1

harmless beyond a reasonable doubt, and we reject the second claim on the merits. Accordingly, we affirm.

BACKGROUND

In 2016, defendant's girlfriend M.F. discovered sexually explicit digital photographs of her sleeping nine-year-old daughter (Doe 1), and her daughter's sleeping friend (Doe 2), with a different skin complexion, stored on a memory card (an "SD card") belonging to defendant. M.F. called 911, and gave her phone (with defendant's SD card in it) to the responding law enforcement officer.

A few days later, M.F. participated in a "pretext phone call" with defendant, who admitted molesting Doe 1 and Doe 2 as depicted in still images and video stored on the memory card. Defendant told M.F. that when he molested the girls he was "outside" his mind and "really fucked up" due to methamphetamine use, but insisted that he "never touched" the girls, but merely "took a picture and that was it."

On defendant's memory card, law enforcement found multiple images and video relevant here, including photographs depicting: defendant's penis touching the lips of one of the girls[1]; one of the girls sleeping and "a hand that's also in the picture" with a "white substance consistent with a semen fluid"; defendant's hand touching the Does's vaginas and "anus area" over the girls' pajamas, and penetrating the "vaginal and anus area" of a Doe; and, "first person" video of defendant stroking his penis outside of his pants, walking toward a sleeping Doe in a bed, touching his penis to Doe's lips, and then running out of the bedroom when Doe moves.

Also on the memory card were about 90 images of child pornography, apparently "from the internet."

---

[1] The photos and video were not included in the record on appeal. Accordingly, it is difficult to determine which Doe is depicted in the images. Presumably, due to the Does's different skin complexions, the jury had no problem distinguishing the victims.

Forensic analyses and further investigation revealed that the photographs of Does 1 and 2, and the video of defendant masturbating himself, were created in Doe 1's bedroom between February and April 2016.

At trial, defendant did not dispute that he: (a) was guilty of possessing child pornography (Pen. Code,[2] § 311.11, subd. (a)—count 11); and (b) inappropriately touched the girls while they slept in Doe 1's bedroom on the 10 occasions alleged in the information. His defense was that he touched the girls *without* the "intent of arousing, appealing to, or gratifying" his "lust, passions, or sexual desires." (§ 288, subd. (a).)

*Defendant's Expert Witness*

Defendant's expert witness was Dr. Christopher Fischer, a clinical forensic psychologist, who testified that, after speaking with both defendant and M.F., and reviewing documents in the district attorney's files in the case, he concluded defendant did not have "pedophilic disorder." Dr. Fischer explained that there were "other significant factors that contributed to [defendant's] behaviors . . . different from a focused longstanding kind of chronic sexual interest in prepubescent children." "[M]ethamphetamine abuse can cause a high degree of . . . hypersexuality in a person," Dr. Fischer explained, resulting in "compulsive sexual behavior including . . . very deviant kinds of sexual behavior that [a person] would not have engaged in when . . . not under the influence of the drug."

On cross-examination by the prosecutor, Dr. Fischer agreed that one need not be a pedophile to molest children; stated that "half of convicted child molesters qualify for a diagnosis of pedophilia"; and explained his opinion that, due to stresses in defendant's personal life, he "spiral[ed] down [a] rabbit hole seeking out more and more deviant

---

[2]  Undesignated statutory references are to the Penal Code.

3

pornography and requiring that to obtain the sexual gratification, and that ultimately led to the charges in this case."

The prosecutor asked Dr. Fischer: "[W]ould you agree that these crimes were based on a sexual interest in these little girls, or would you . . . describe it as some other basis for that conduct?"

Dr. Fischer replied: "[W]hen I think about sexual interest . . . I kind of equate that with a pedophilic disorder, so a longstanding, focused, recurrent intense pattern of attraction and arousal to prepubescent children. And so, from my perspective, no, I don't think [defendant] has that kind of sexual interest at all."

Later, Dr. Fischer summarized the essence of his opinion: "In those moments in the middle of the night when [defendant] was—his, his sexual interests had been sort of hypercharged, exacerbated by the meth abuse over a long period of time, by the lack of sleep for days on end, by the pornography that was charging him up, yes, I think in that moment his behavior with these girls was sexual in nature and was related to a pursuit of some kind of sexual gratification."

*Defendant's Antisocial Personality Disorder*

Before Dr. Fischer testified, the parties disputed the propriety of putting before the jury Dr. Fischer's opinion that defendant had antisocial personality disorder, which was based, at least in part, on defendant's prior criminal convictions. Defense counsel argued that the disorder was irrelevant to the issues the jury had to decide.

The prosecutor argued that keeping the information from the jury, would be "highly misleading," because defendant had been "diagnosed with something that most pedophiles suffer from," and the prosecutor wanted to ask Dr. Fischer if "people with antisocial personality disorder are more likely than someone without that diagnosis to commit a sexually deviant crime because they don't care about the feelings and pain that they're causing others[.]"

4

The trial court ruled for the prosecution, saying: "I believe that there is relevance to it in meeting the Defense's defense in the case. There is relevance to the cross-over between an antisocial personality disorder and someone committing sex crimes on children." But the trial court ordered the prosecution "not [to] get into the specifics" regarding the basis for Dr. Fischer's opinion regarding defendant's disorder.

On cross-examination, the prosecutor and Dr. Fischer engaged in the following colloquy:

"[Prosecutor:] Is there a predominant personality disorder amongst the pedophilic population . . . and if so, what is that usually?

"[Dr. Fischer:] [N]o, there's not a prominent one. . . . [S]ome men with pedophilia would also be diagnosed with antisocial personality disorder, but many would not as well.

"[Prosecutor:] And the Defendant in this case was diagnosed with antisocial personality disorder?

"[Dr. Fischer:] Yes, and not pedophilia."

*Voluntary Intoxication Jury Instruction & Closing Arguments*

The trial court read to the jury CALCRIM No. 3426, the instruction on voluntary intoxication. The trial court explained that the jury could consider defendant's voluntary intoxication "only in deciding whether the Defendant acted with the intent of arousing, appealing to or gratifying the lust, passions or sexual desires of himself or the child."

Defense counsel told the jury to consider defendant's "voluntary intoxication" vis-à-vis section 288, subdivision (a)'s intent element: "You get to consider" defendant's voluntary intoxication, counsel told the jury, "and you get to consider it in negating the specific intent that [defendant] did not touch those girls with a sexual intent when he touched them."

Defense counsel reminded the jury of Dr. Fischer's opinion that defendant was not a pedophile: "You just don't decide to be a pedophile when you get to be mid 30s."

5

The prosecutor told the jury it was "absurd to someone using their commonsense that an individual can molest two little girls on multiple occasions, possess over 90 images of the most disturbing child pornography . . . [and] not meet the definition of a pedophile." In any event, the prosecutor explained he did not have to prove that defendant was a pedophile; he had to prove only that defendant had a sexual intent when he inappropriately touched Does 1 and 2. And the prosecutor insisted that defendant's "star witness" "sealed the coffin" by saying " 'yes,' it was sexual."

Questioning defendant's voluntary intoxication defense, the prosecutor told the jury: "He was so [intoxicated] that he was able to take out his cell phone . . . . Open the phone up. Open the camera. Make sure [M.F.'s] asleep. Check and make sure [Doe 1's] asleep. Make sure [Doe 2] is asleep. Slowly take out his penis, begin to masturbate all the while recording. Slowly walk up to the little girl's bed, put a semi-erect penis up to her mouth on her lips, and she moves slowly, and he scampers away."

The prosecutor referenced defendant's antisocial personality disorder: "There's overlap between antisocial personality disorder and pedophilia. That makes sense. Common sense would dictate that if someone able to sneak into a little girl's bedroom . . . and put his fingers on her body and put his face between her legs, that person has something wrong with them. There is overlap."

*Verdicts & Sentencing*

The jury found defendant guilty on all charges in the information—10 counts of violating section 288, subdivision (a), and one count of possessing child pornography in violation of section 311.11, subdivision (a). The jury also found true the special allegation that defendant committed his crimes against more than one victim. (§§ 667.61, subd. (e)(4) & 667.61, subd. (j)(2).)

A presentencing probation report, which the trial court read and considered, reflected three prior felony convictions: a 2003 first degree burglary conviction (§ 459); a 2004 conviction for driving or taking a vehicle without the owner's consent (Veh.

6

Code, § 10851, subd. (a)); and a 2017 conviction for stalking when there was a temporary restraining order in effect (§ 646.9, subd. (b)).  Regarding the stalking conviction, the report explained that "between the periods of 12/8/15 and 7/25/16, the defendant sent several hundred text messages to a former girlfriend," stating, " '*You're gonna die, bitch*,' " among other declarations.

At the sentencing hearing, defendant admitted the first degree burglary prior strike conviction, and the trial court denied defendant's *Romero* motion to strike his prior strike, explaining:  "[B]ased upon the criminal history of [defendant], I could not find that he falls outside the spirit of the three strikes.  The three strikes law was, of course, put in place . . . to address recidivism, to address those who continually commit felony crimes.  [Defendant] simply would not fall outside the spirit of the three strikes to the point where I would find that it was not intended for individuals like [defendant].  So the *Romero* motion to strike the strike is denied."

The trial court imposed a total term of 504 years in prison, consisting of a determinate term of four years (the middle term of two years, doubled because of the prior strike) for defendant's possession of child pornography (§ 311.11, subd. (a)), and 10 consecutive terms of 50 years to life (terms of 25 years to life, pursuant to § 667.61, subd. (j)(2), doubled because of the prior strike) for the lewd acts on Does 1 and 2 (§ 288, subd. (a)).

Defendant timely appealed.

DISCUSSION

I

Defendant's first claim on appeal is that the trial court abused its discretion under section 352[3] of the Evidence Code, and violated defendant's due process rights when it denied defendant's motion to exclude evidence of Dr. Fischer's antisocial personality disorder diagnosis. Defendant contends that the probative value of the diagnosis was "so conspicuously outweighed by its inflammatory content that it" violated defendant's right to due process. The People argue Dr. Fischer's diagnosis was "quite probative" and "not unduly prejudicial" to defendant. And, in any event, the People maintain, any error was harmless. Because we agree with the People that any error was harmless beyond a reasonable doubt, we need not adjudicate the merits of this claim. (Cf. *People v. Corona* (1989) 211 Cal.App.3d 529, 535 ["the applicable harmless error standard makes it entirely unnecessary to decide the merits" of defendant's argument].)

Assuming arguendo that there was evidentiary error, it was harmless under any standard of reversible error. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710] [federal constitutional error must be harmless beyond a reasonable doubt]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [not reasonably probable defendant would have obtained a more favorable result in the absence of error of state law].) This is so, because no reasonable jury could have concluded that defendant lacked the specific intent "of arousing, appealing to, or gratifying" his "lust, passions, or sexual desires" (§ 288, subd. (a)) when he touched the two Does while they slept. (*People v. Warner* (2006) 39 Cal.4th 548, 557 [§ 288, subd. (a) requires the specific intent of arousing, appealing to, or gratifying the lust of the child or the accused].)

---

[3] "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

"[T]he circumstances of the touching remain highly relevant to a section 288 violation. The trier of fact must find a union of act and sexual intent [citation], and such intent must be inferred from all the circumstances beyond a reasonable doubt. A touching which might appear sexual in context because of the identity of the perpetrator, the nature of the touching, or the absence of an innocent explanation, is more likely to produce a finding that the act was indeed committed for a sexual purpose and constituted a violation of the statute." (*People v. Martinez* (1995) 11 Cal. 4th 434, 452.)

Here, defendant was dating the mother of one of the victims, and took multiple digital photographs of his fingers touching the vaginal and anal areas of the girls while they slept in Doe 1's bedroom; his penis on the lips of at least one Doe; and his hand with a "white substance consistent with a semen fluid" in the same frame as a sleeping Doe. Defendant also took a video of himself masturbating while approaching a sleeping Doe, placing his penis on her lips. The circumstances of semen on defendant's hand, defendant placing his sexual organ on one of the Doe's lips, and defendant masturbating himself just before placing his sexual organ on one of Doe's lips, preclude an "innocent explanation," and permit only one conclusion when defendant touched the Does, he did so with the specific intent to gratify his sexual desires.

Defendant cites to nothing in the record—whether as to the absence of a pedophilic disorder diagnosis or the presence of voluntary intoxication, which theoretically may have negated defendant's mens rea—that undermines the sole plausible conclusion the jury reached.[4] Regarding the non-diagnosis of a pedophilic disorder, and as the prosecutor explained in closing argument, defendant's expert's testimony did *not* support a theory that defendant lacked the necessary intent under section 288; quite the contrary. Dr. Fischer stated that only "half of convicted child molesters qualify for a

---

[4] Defendant contends "this was a fairly close case," but cites only defense counsel's closing argument to the jury when explaining the defense at trial.

9

diagnosis of pedophilia," and conceded that, defendant's "behavior with these girls was sexual in nature and was related to a pursuit of some kind of sexual gratification."

As for defendant's voluntary intoxication at the time he committed his crimes, the notion that defendant's sexual intent may have been "hypercharged" and "exacerbated" by his use of methamphetamine is immaterial to the question whether he actually *had* the relevant intent (however "unexacerbated") when he touched the Does. (See *People v. Mendoza* (1998) 18 Cal.4th 1114, 1133-1134 [juries "often do reject an intoxication claim," which, "while legally relevant, may be factually unconvincing"].)

Here, similar to our recent conclusion in *People v. ZarateCastillo* (2016) 244 Cal.App.4th 1161, 1169, there is no "basis for believing that the jury could have, under any circumstances, rationally found that defendant" placed his penis on a victim's lips, touched the victims' vaginal and anal areas, and masturbated himself just before placing his penis on a victim's lips, "for any purpose other than sexual abuse, arousal, or gratification. Under these circumstances, the trial court's [evidentiary] error,[5] was harmless beyond a reasonable doubt." (See also *People v. Saavedra* (2018) 24 Cal.App.5th 605, 616 ["The record on appeal . . . contains no evidence that could rationally lead to a finding the act of penetration . . . was committed for a purpose other than sexual arousal, gratification, or abuse. . . . Since no rational jury could have found the specific intent element unproven, the error was harmless beyond a reasonable doubt"].)

## II

Defendant contends the trial court abused its discretion in denying his motion to dismiss his 2003 residential burglary conviction. He maintains that the strike offense "was committed 13 years prior to the present offenses when [defendant] was just 24 years

---

[5] Which, we emphasize, we assumed arguendo.

10

old," and that he "did not suffer another felony conviction until after he allegedly committed the present offenses." The People argue the trial court did not err. We agree with the People.

The three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) uses a defendant's status as a recidivist to separately increase the punishment for each new felony conviction. (*People v. Williams* (2004) 34 Cal. 4th 397, 404.) In reviewing a ruling not to dismiss a strike, "the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) We review for an abuse of discretion. (See *People v. Carmony* (2004) 33 Cal.4th 367, 375.)

Here, the trial court explained that it read the presentencing report, and understood it had discretion to dismiss the prior strike, but believed defendant fell within the spirit of the three strikes scheme, explaining, "based upon the criminal history of [defendant], I could not find that he falls outside the spirit of the three strikes."

The presentencing report detailed defendant's recent felony stalking conviction. Despite a temporary order, defendant sent hundreds of text messages to a former girlfriend between December 2015 and July 2016, the contents of at least some of which were extremely disturbing. That conduct began before, then overlapped with, and then extended beyond, the period of time when defendant committed his crimes against the Does (February-April 2016).

Thus, defendant's contention that he "did not suffer another felony conviction until after" his instant crimes, is misleading. Defendant may not have been convicted of felony stalking until after he molested Does 1 and 2, but he engaged in the underlying conduct before and during the instant crimes.

11

In any event, in light of defendant's recent felony stalking conviction, the trial court's decision not to strike defendant's prior strike offense was not "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony, supra*, 33 Cal.4th at p. 377.)

## DISPOSITION

The judgment is affirmed.

/s/
BLEASE, Acting P. J.

We concur:

/s/
HULL, J.

/s/
HOCH, J.